Filed 3/24/26  P. v. Whiteside CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>TANAZA SHAWNTEE WHITESIDE,<br><br>      Defendant and Appellant. | B343062<br><br>(Los Angeles County<br>Super. Ct. No. YA066850) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura C. Ellison, Judge.  Affirmed.

Jonathan E. Demson and Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

————————

In 2008, Tanaza Shawntee Whiteside pleaded no contest to second degree murder and two counts of attempted murder. The trial court sentenced her to a prison term of 15 years to life and two concurrent 7-year terms for the attempted murders.

Fourteen years later, in 2022, Whiteside filed a petition for resentencing under Penal Code section 1172.6.[1] The superior court summarily denied the petition, but we reversed and remanded the case for further proceedings. Following remand, the trial court ruled that Whiteside made a prima facie showing of eligibility for relief. The trial court held an evidentiary hearing at which the People presented evidence of statements Whiteside made at her parole hearing in 2019. The superior court once again denied the petition.

Whiteside argues the superior court erred in relying on statements she made at her parole hearing to deny her petition. Whiteside also argues that remand is necessary because the superior court failed to expressly mention its findings as to the attempted murders. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Whiteside Pleads No Contest to Second Degree Murder and Two Counts of Attempted Murder*

In 2008, Whiteside pleaded no contest to second degree murder (§ 187, subd. (a)) and two counts of attempted murder (§§ 664/187, subd. (a)). The trial court sentenced Whiteside to a prison term of 15 years to life (with the sentence on the

---

[1] Undesignated statutory references are to the Penal Code.

2

attempted murders to run concurrently) pursuant to the plea agreement.

B.   *Whiteside Admits She Shot the Murder Victim in the Face and Shot at the Two Attempted Murder Victims*

In 2019, Whiteside testified before a panel of commissioners of the Board of Parole Hearings. Whiteside explained the difficult circumstances of her upbringing and reflected on why she joined a gang. Whiteside admitted to shooting at two people in November 2006: "So I just wind up chasing them down the street. I pulled out my gun and I started chasing him down the street and I started shooting at them." Whiteside also admitted to shooting and killing someone else a few days later: "I shoot [victim] in the face and once he shot in the face, um, he on the floor and I'm looking to see if he going to get back up or not, to see if he's dying. Once I realized that he's dying, um, I drive off. . . ."

C.   *The Superior Court Denies Whiteside's Petition for Resentencing Under Section 1172.6*

In 2022, Whiteside filed a petition for resentencing under section 1172.6. The trial court appointed counsel. At the hearing to determine whether appellant had established a prima facie showing for relief, the trial court summarily denied the petition. We reversed and remanded, and the trial court subsequently set an evidentiary hearing. The People's evidentiary hearing brief included the transcript from appellant's 2019 Board of Parole hearing.

At the evidentiary hearing, counsel for Whiteside argued the parole hearing was a "coercive environment" and thus the

court should not consider the statements. The trial court stated, "In reading the transcript . . . I didn't see anything unduly coercive. Your client is very free flowing and very apologetic, frankly, somewhat apologetic for her actions. She suggests her motivations as being gang lifestyle. . . . She also clearly admits to having a firearm and shooting somebody in the face; does she not? As well as other actions. So I have to say from the totality of the evidence I think the People have been able to prove beyond a reasonable doubt that the petitioner was acting with malice aforethought when she killed the victim in this case. . . . So I will deny the motion. I think it is properly considered, the transcripts that were presented as evidence. I don't see anything in the cases that say I should not consider them." The superior court denied the petition in its entirety. Whiteside timely appealed.

## DISCUSSION

Whiteside contends the superior court erred in relying on statements she made at her parole hearing because, according to Whiteside, those statements "should not be admissible as substantive evidence of guilt at a subsequent criminal proceeding, including an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3)." She relies on *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*), where the Supreme Court held testimony by a probationer at a probation revocation hearing "is inadmissible against the probationer during subsequent proceedings on the related criminal charges" (*id.* at p. 889), a rule known as the "*Coleman* use-immunity rule."[2]

---

[2] The term "use immunity" refers to " 'immunity from the use of compelled testimony, as well as evidence derived directly

(*People v. Weaver* (1985) 39 Cal.3d 654, 658; see *People v. Rodriguez* (2025) 110 Cal.App.5th 458, 467 (*Rodriguez*).) Whiteside seeks to extend "use immunity grounded in California's constitutional guarantee against self-incrimination" to evidentiary hearings under section 1172.6, subdivision (d)(3). As Whiteside acknowledges, however, the weight of the authority does not support her argument. We follow that authority.

A. *Applicable Law and Standard of Review*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly narrowing the felony-murder exception to the malice requirement for murder. (*People v. Oyler* (2025) 17 Cal.5th 756, 835 (*Oyler*); *People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*); *People v. Arellano* (2024) 16 Cal.5th 457, 467-468; *People v. Curiel* (2023) 15 Cal.5th 433, 448-449; see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 [felony murder]; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 [natural and probable consequences].) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on a person's participation in a crime and requires proof of malice to

---

and indirectly therefrom.' " (*People v. Cooke* (1993) 16 Cal.App.4th 1361, 1366; see *People v. Knight* (2015) 239 Cal.App.4th 1, 7 [" 'Use immunity rules apply where there is a compulsive sanction against exercise of the privilege against self-incrimination and where the policy of law favors full disclosure or discussion by the accused' "].) Use immunity "prevents a prosecutor from using the immunized testimony against the witness" and "provides sufficient protection to overcome a Fifth Amendment claim of privilege." (*Cooke*, at p. 1366.)

5

convict a defendant of murder, except under the revised felony-murder rule.  (§ 189, subd. (e); *Patton*, at p. 558; *Arellano*, at pp. 467-468; *Curiel*, at pp. 448-449.)  Effective 2022, the Legislature amended section 1172.6 to apply to persons convicted of "attempted murder under the natural and probable consequences doctrine."  (§ 1172.6, subd. (a); see *Patton*, at p. 558; *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.)

Section 1172.6 authorizes a person convicted of felony murder, murder under the natural and probable consequences doctrine, or attempted murder under the natural and probable consequences doctrine, to petition the superior court to vacate the conviction and resentence the defendant on any remaining counts if he or she could not now be convicted of murder or attempted murder because of the legislative changes to the definitions of murder.  (See *Oyler*, *supra*, 17 Cal.5th at p. 835; *People v. Arellano*, *supra*, 16 Cal.5th at pp. 468-469; *Curiel*, *supra*, 15 Cal.5th at pp. 449-450.)  If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested.  (§ 1172.6, subd. (b)(1)(A), (b)(3); *Patton*, *supra*, 17 Cal.5th at p. 562; *People v. Lewis* (2021) 11 Cal.5th 952, 962-963.)  The People must file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (§ 1172.6, subd. (c); *People v. Antonelli* (2025) 17 Cal.5th 719, 724; *Patton*, at p. 556.)

At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony.  (§ 1172.6, subd. (d)(3); see *Oyler*, *supra*, 17 Cal.5th at p. 836;

*Rodriguez, supra*, 110 Cal.App.5th at p. 465.) The petitioner and the prosecutor may also offer new or additional evidence "to meet their respective burdens." (§ 1172.6, subd. (d)(3); see *People v. Gentile, supra*, 10 Cal.5th at pp. 853-854; *People v. Zavala* (2024) 105 Cal.App.5th 366, 373 (*Zavala*).)

"The admission of evidence is usually reviewed for an abuse of discretion [citation], but a court abuses its discretion when it misapprehends the pertinent law [citation]. Whether use immunity exists" is a question of law "we review de novo." (*People v. Duran* (2022) 84 Cal.App.5th 920, 927-928 (*Duran*); accord, *Zavala, supra*, 105 Cal.App.5th at p. 373.)

B. *The Superior Court Did Not Err in Admitting Statements Whiteside Made to the Parole Board*

As discussed, section 1172.6, subdivision (d)(3), authorizes the parties to introduce "new or additional evidence" at the evidentiary hearing. "It is well settled that a defendant's statements in a parole risk assessment report and testimony at a parole hearing fall within the ambit of ' "new or additional evidence." ' " (*Zavala, supra*, 105 Cal.App.5th at p. 373; see *Rodriguez, supra*, 110 Cal.App.5th at p. 466; *Duran, supra*, 84 Cal.App.5th at p. 927; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 586 (*Mitchell*); *People v. Anderson* (2022) 78 Cal.App.5th 81, 93; *People v. Myles* (2021) 69 Cal.App.5th 688, 703 (*Myles*).)

Whiteside argues that using statements she made at her parole hearing against her at the evidentiary hearing under section 1172.6, subdivision (d)(3), "implicates substantially the same set of concerns identified by the California Supreme Court in *Coleman*." Whiteside urges us to follow the dissenting opinion in *Mitchell, supra*, 81 Cal.App.5th 575, which concluded

7

admitting the defendant's testimony before the parole board was "fundamentally unfair" under *Coleman*. (*Mitchell*, at p. 604 (dis. opn. of Stratton, P. J.).) We agree with the majority opinion in *Mitchell*, and every court that has addressed the issue, that *Coleman* does not apply to evidentiary hearings under section 1172.6, subdivision (d)(3).

In *Coleman*, *supra*, 13 Cal.3d 867 the defendant was on probation when he committed a crime that justified revoking his probation and filing independent criminal charges. (*Id.* at pp. 871-872.) After moving unsuccessfully to continue the probation revocation hearing until after the criminal proceedings (on the new case) had concluded, the defendant argued "the revocation of his probation in advance of trial denied him procedural due process because he was forced to forego his opportunity to testify in his own behalf at his revocation hearing in order to avoid incriminating himself at his pending trial." (*Id.* at p. 871.) The Supreme Court held "permitting a probationer's testimony at his revocation hearing to be used against him at the subsequent criminal trial for the very misconduct at issue in the revocation proceeding" would "adversely affect[ ]" at least two of "the many and varied policies underlying the privilege against self-incrimination." (*Id.* at p. 875.) First, the prosecution's heavy burden in a criminal trial "to prove through its own investigation the guilt of the defendant may be substantially lightened if the prosecution is allowed to take advantage of the defendant's testimony at a prior probation revocation hearing." (*Id.* at p. 876.) Second, "when an alleged probation violation also constitutes a criminal offense for which the probationer might subsequently be prosecuted," the probationer may be forced "to choose between the privilege [against self-incrimination] and his

8

opportunity to be heard at his revocation hearing." (*Id.* at p. 878.) The Supreme Court in *Coleman* declared "a judicial rule of evidence" that, upon a timely objection, "the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges," except for limited impeachment or rebuttal purposes. (*Id.* at p. 889.)

The concerns in *Coleman* are not present in proceedings under section 1172.6 because the Fifth Amendment privilege against self-incrimination does not apply at the evidentiary hearing. (See *Rodriguez, supra*, 110 Cal.App.5th at p. 466 [defendant "was not protected by the privilege against self-incrimination during his section 1172.6, subdivision (d)(3) evidentiary hearing, and incriminating statements he made during his parole proceedings were therefore admissible"]; *Zavala, supra*, 105 Cal.App.5th at p. 376 [same]; *Duran, supra*, 84 Cal.App.5th at p. 930 [same]; *Mitchell, supra*, 81 Cal.App.5th at p. 589 [same]; *Myles, supra*, 69 Cal.App.5th at p. 706 [same].) "The Fifth Amendment privilege against self-incrimination protects persons from being compelled by ' "governmental coercion" ' to serve as witnesses against themselves in ' "any *criminal case*." ' [Citation.] A section [1172.6] hearing, however, ' "is not a trial *de novo* on all the original charges." [Citation.] Rather, it is a *postconviction* proceeding "due to the Legislature's inclusion of section [1172.6] in Senate Bill No. 1437 . . . , [as] an 'act of lenity' [citation], allowing for the retroactive application of the new law governing accomplice liability for felony murder [citation] for defendants already serving valid sentences for

9

murder." ' "  (*Myles*, at pp. 705-706; accord, *Rodriguez*, at p. 467; *Zavala*, at p. 376; *Mitchell*, at p. 588; see *Duran*, at p. 930 ["the section 1172.6 evidentiary hearing where [the] defendant's . . . parole risk assessment statement was used is . . . neither a subsequent retrial nor a new sentencing"].)

In addition, as several courts have pointed out, "the Fifth Amendment protects individuals from government coercion." (*Myles*, *supra*, 69 Cal.App.5th at p. 706.)  But Whiteside herself, not the government, initiated the petition process under section 1172.6.  (See *Rodriguez*, *supra*, 110 Cal.App.5th at p. 467 [section 1172.6 requires defendants "seeking its ' "ameliorative benefits" ' to initiate the process by filing a petition"]; *Mitchell*, *supra*, 81 Cal.App.5th at p. 589 [the resentencing process under section 1172.6 "could not even begin until [the defendant] gave the court *his* statement, under oath, about his role in the crime to which he pleaded guilty"]; *Myles*, at p. 706 [defendant "was not compelled to file a section [1172.6] petition"].)

Whiteside also argues that, even if the privilege against self-incrimination "is not implicated" here, "basic principles of procedural fairness surely *are*."  Whiteside asserts it would be "*unfair*" to require the defendant to choose between " 'self-accusation, perjury or injurious silence.' "  We do not see how it is unfair to preclude Whiteside from, on the one hand, encouraging the parole board to grant her parole by fully accepting responsibility for her crimes while, on the other hand, seeking a reduction in her sentence by minimizing her role in the crimes. (See *Mitchell*, *supra*, 81 Cal.App.5th at p. 590 ["It would be unjust for [the defendant] to gain an advantage his sworn description shows he does not merit"].)

Whiteside's parole hearing testimony was properly admitted.

C.   *A Remand for the Trial Court to Specifically Address Whiteside's Two Attempted Murder Convictions is Unnecessary*

Whiteside contends that the matter should be remanded because the trial court did not expressly address her two attempted murder convictions when finding her ineligible for resentencing.  Respondent argues that remand is inappropriate because it would be an "idle act."  Whiteside does not rebut this argument in her reply brief.

At the evidentiary hearing, the court acknowledged receiving the People's opposition to appellant's motion, and appellant's reply brief, each of which expressly and repeatedly refer to appellant's "murder and attempted murder convictions[.]" In denying appellant's petition, the court relied on appellant's statements in her parole hearing, which included her description of the two attempted murders.  The trial court observed, "[Whiteside] also clearly admits to having a firearm and shooting somebody in the face; does she not?  *As well as other actions*." (Italics added.)  The other actions to which Whiteside admitted included the attempted murders.  In her parole hearing testimony, Whiteside unequivocally explained that she armed herself with a gun and then chased and shot at two people.

Whiteside does not dispute that she was the sole and actual shooter in the attempted murders.  Instead, she contends that she is eligible for resentencing because the trial court "simply made no mention of appellant's two attempted murder convictions."  While the trial court's ruling did not specifically

11

address the attempted murders beyond its reference to "other actions," the trial court's summary of Whiteside's statements show that the court considered the entirety of Whiteside's testimony, which includes Whiteside's unequivocal admission that she was the actual shooter in the attempted murders. As discussed above, the parole hearing testimony was properly admitted. It is apparent from that testimony that the superior court correctly denied the section 1172.6 petition as to the attempted murder convictions, and there is no need to remand the matter for a more detailed denial. (*People v. Jefferson* (2019) 38 Cal.App.5th 399, 409 ["remand is not appropriate when it would be an idle act"]; *People v. Glass* (2025) 110 Cal.App.5th 922, 929 ["If a petitioner is ineligible for section 1172.6 relief, we shall affirm the court's denial of a petition regardless of its reasoning"].)

## DISPOSITION

The order denying Whiteside's petition under section 1172.6 is affirmed.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.          BENDIX, J.

12